In the Matter of the complaint of UFO CHUTING OF HAWAII, INC., et al.

No. CIV. 99–00554 LEK.

United States District Court, D. Hawai'i.

March 29, 2002.

Dennis Niles Paul, Johnson, Park & Niles, Wailuku, HI, for plaintiff.

Kevin H.S. Yuen, Law Office of Kevin H.S. Yuen, Wailuku, HI, for defendant.

James H. Lawhn, Keith Y. Yamada, Oliver Lau Lawhn Ogawa & Nakamura, Honolulu, HI, for claimant.

### ORDER GRANTING LIMITATION DEFENDANTS/COUNTERCLAIM PLAINTIFF'S MOTION FOR ORDER DIRECTING PAYMENT OF JUDGMENT BY SURETY; ORDER DENYING RELIANCE INSURANCE COMPANY'S MOTION FOR i) AN ORDER DIRECTING JUDGMENT DEBTOR TO PAY THE JUDGMENT AMOUNT TO THE COURT FOR DISTRIBUTION TO JUDGMENT CREDITORS; OR ii) ISSUANCE OF A WRIT OF EXECUTION

KOBAYASHI, United States Magistrate Judge.

Before the Court is Limitation Defendants/Counterclaim Plaintiffs Diana Lynn Olivieri and Ralph S. Olivieri's Motion for Order Directing Payment of Judgment by Surety, filed May 29, 2001 ("Motion for Order Directing Payment"); and Reliance Insurance Company's Motion for i) Order Directing Judgment Debtor to Pay the Judgment Amount to the Court for Distribution to Judgment Creditors; or ii) Issuance of a Writ of Execution, filed June 4, 2001 ("Motion for Judgment Debtor to Pay"). The matter came on for hearing before the Honorable Leslie E. Kobayashi on July 31, 2001. Kevin H.S. Yuen, Esq., appeared on behalf of the Limitation Defendants/Counterclaim Plaintiffs; Dennis Niles, Esq., appeared on behalf of Limitation Plaintiff/Counterclaim Defendant; and James H. Lawhn, Esq., appeared on behalf of Reliance Insurance Company. The Court, having carefully considered the written submissions and arguments of counsel, hereby GRANTS Limitation Defendants' Motion for Order Directing Payment, and DENIES Reliance's Motion for Judgment Debtor to Pay.

## BACKGROUND

In 1999, Limitation Defendants/Counterclaim Plaintiffs Diana Lynn Olivieri and Ralph S. Olivieri (the "Olivieris"), submitted a claim to Limitation Plaintiff/Counterclaim Defendant UFO Chuting of Hawaii, Inc., et al. ("UFO"), based on bodily injuries sustained by Mrs. Olivieri. UFO tendered the claim to their insurer, Paradigm Insurance Company ("Paradigm").[1] Pursuant to its Complaint For Exoneration From or Limitation of Liability, filed on August 6, 1999, UFO requested relief under the Limitation of Liability Act, 46 U.S.C. §§ 181 et seq., and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims.

On August 6, 1999, UFO filed a pleading entitled, "Ad Interim Stipulation for Value," ("Stipulation") in which UFO, as principal, and Reliance Insurance Company ("Reliance"), as surety and "stipulator" agreed to undertake the sum of $124,616, plus interest of 6% per year, as security for all claims and prospective claims in the limitation proceeding. This Court approved the Stipulation on August 9, 1999. On September 13, 1999, the Olivieris filed a Counterclaim against UFO alleging negligence.

A bench trial in the matter was held on March 29, 2001.[2] Findings of Fact, Conclusions of Law and Order were filed by the Court on May 1, 2001, ordering that judgment be entered in favor of the Olivieris in the amount of $95,000. Final judgment was entered on May 11, 2001.

On May 17, 2001, the Olivieris, through counsel, sought payment of the judgment from Reliance.[3] In response, Reliance demanded assignment of the judgment as a

---

1. On March 22, 2001, Paradigm was ordered into receivership by an Indiana state court.

2. By letter dated March 26, 2001, UFO and the Olivieris agreed to entry of judgment in the amount of $95,000 ("Agreement"). As part of the Settlement Agreement, the Olivieris agreed not to execute upon the assets of UFO except for any surety of insurance policy ("covenant not to execute").

3. On May 29, 2001, the Commonwealth Court of Pennsylvania granted the petition of the Insurance Commissioner of that state placing Reliance into "rehabilitation." The court's Order stays all proceedings "in the Commonwealth or elsewhere" involving Reliance. (Exh. 8 to UFO's Mem. in Opp'n.)

condition of payment. The Olivieris refused assignment. The parties now seek this Court's assistance in enforcing judgment.

On May 29, 2001, the Olivieris filed the instant Motion for Order Directing Payment. On July 12, 2001, Reliance filed a response to the motion, to which the Olivieris replied on July 23, 2001.

On June 4, 2001, Reliance filed its Motion for Judgment Debtor to Pay.[4] UFO filed its opposition to the same on July 13, 2001, and on July 20, 2001, Reliance replied.

## DISCUSSION

The Olivieris seek an order directing payment of the judgment by Reliance, including 10% interest and attorneys' fees. Reliance objects, asserting that the covenant not to execute entered into by the Olivieris and UFO discharged Reliance from any duty of payment owed under the Stipulation. UFO opposes Reliance's motion and seeks attorneys' fees and costs incurred in opposing the motion. Before turning to an analysis of the issues raised, the Court briefly discusses in turn the arguments advanced by each party and/or interested party.

### I. *The Olivieris*

The Olivieris have moved to enforce Reliance's liability pursuant to Rule 65.1 of the Federal Rules of Civil Procedure. The rule states, in pertinent part:

> Whenever these rules, including the Supplemental Rules for Certain Admiralty and Maritime Claims require or permit the giving of security by a party, and security is given in the form of a bond or stipulation or other undertaking with one or more sureties, each surety submits to the jurisdiction of the court and irrevocably appoints the clerk of the court as the surety's agent upon whom any papers affecting the

surety's liability on the bond or undertaking may be served. The surety's liability may be enforced on motion without the necessity of an independent action.

Fed.R.Civ.P. 65.1. Essentially, the Olivieris claim that under the rule and pursuant to the Stipulation, Reliance is obligated to satisfy the judgment amount.

### II. *Reliance*

While Reliance raises many arguments, the main thrust of their position is that under the Restatement of Suretyship and Guaranty ("Restatement") they are discharged from liability under the Stipulation, because Reliance's rights of recourse against UFO have been impaired.[5] Reliance primarily cites to § 37(3) of the Restatement for support, which states, in pertinent part:

> (3) If the Obligee impairs the secondary obligor's recourse against the principal obligor by:
>
> (a) releasing the principal obligor from a duty to pay money (§ 39(c)(ii));
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> the secondary obligor is discharged from its duties pursuant to the secondary obligation to the extent set forth in those sections [§§ 39–44] in order to prevent the impairment of recourse from causing the secondary obligor a loss.

Restatement (Third) Suretyship & Guar. § 37(3) (1995) [hereinafter "RS"]. The comments to § 38 of the Restatement explain the effect of this section: "[u]nder § 37(3) the obligee's impairment of the secondary obligor's recourse generally will discharge the secondary obligor to the extent necessary to prevent loss." *Id.* § 38 cmt. b.

Additionally, Reliance claims that they are discharged under § 39, because the Olivieris and UFO executed a release[6] which failed to

---

**4.** Reliance filed its Supplemental Motion for Judgment Debtor to Pay, and statement of uncontested facts in support on June 18, 2001. Further, the parties filed several additional pleadings including affidavits, citations to authorities, and other supplements, which the Court need not list here.

**5.** The Restatement, according to Reliance, reflects the "modern view" and has been followed

by the majority of courts, including the Ninth Circuit.

**6.** While not formally termed a "release," Reliance contends that the Agreement between the Olivieris and UFO is the equivalent of a release, and therefore § 39 applies. In support, Reliance cites the comment to § 39, which states:

> This section applies not only to situations in which the obligee grants a formal release to

preserve Reliance's rights of recourse. Section 39 states:

To the extent that the obligee releases the principal obligor from its duties pursuant to the underlying obligation:

(a) the principal obligor is also discharged from any corresponding duties of performance and reimbursement owed to the secondary obligor unless the terms of the release effect a preservation of the secondary obligor's recourse (§ 38);

(b) the secondary obligor is discharged from any unperformed duties pursuant to the secondary obligation unless:

(i) the terms of the release effect a preservation of the secondary obligor's recourse (§ 38); or

(ii) the language or circumstances of the release otherwise show the obligee's intent to retain its claim against the secondary obligor;

(c) if the secondary obligor is not discharged from its unperformed duties pursuant to the secondary obligation by operation of paragraph (b), the secondary obligor is discharged from those duties to the extent:

*    *    *    *    *    *

(ii) that the release of a duty to pay money pursuant to the underlying obligation would otherwise cause the secondary obligor a loss.

RS § 39 (1995). Therefore, while Reliance continues to be obligated to the Olivieris[7] under § 39(b), the Agreement nonetheless discharges Reliance as provided in § 39(c)(ii)

the principal obligor, but also to any agreement that has the effect of freeing the principal obligor of any enforceable duty to the obligee. Thus, this section applies when an obligee agrees never to seek enforcement of the underlying obligation, even if, strictly speaking, the underlying obligation is not released.
RS § 39 cmt. i.

7. Because the Olivieris' rights against Reliance were specifically retained in the Agreement, Reliance is not discharged under § 39(b)(ii).

8. According to Reliance, because their rights of subrogation have been limited to collection of a judgment from an insolvent insurer (Paradigm), they will suffer a loss equal to the amount of the judgment.

to the extent that the release causes Reliance to suffer a loss.[8] *See* RS § 39 cmt. d. ("[I]f the secondary obligor is not discharged by operation of [§ 39](b), the release may nonetheless discharge the secondary obligor as provided in [§ 39](c).").

Based on these sections of the Restatement, Reliance concludes, they are discharged from any duty of payment and the Olivieris' rights of collection are against Paradigm. Accordingly, Reliance requests denial of the Olivieris' motion.

### III. *UFO Chuting*

UFO vehemently disputes Reliance's position. First, UFO argues that this Court is without jurisdiction to entertain Reliance's requests. Specifically, UFO claims that Reliance, who is not a party to the action, may not invoke Rule 65.1 to oppose the Olivieris' motion or to enforce its rights of exoneration and/or subrogation. According to UFO, Reliance's motion, which seeks to shift its obligation to pay, is essentially a "collateral attack on the validity of the [Olivieris' motion]" and is not properly brought under the rule. (UFO's Mem. in Opp'n at 8.) Under Rule 65.1, while the surety expressly consents to jurisdiction for enforcement of the bond against it, the surety is not thereunder granted party status, nor does it become a beneficiary of the judgment. *See* Fed.R.Civ.P. 65.1. Accordingly, claims UFO, the proper vehicle for Reliance's claim against UFO and/or Paradigm is an independent action for declaratory relief.[9] Moreover, UFO claims,

9. Further, UFO claims, Reliance is not entitled to assert its claim as a cross-claim, because it is not a "co-party," *see* Fed.R.Civ.P. 13(g) (allowing for cross-claims by "one party" against a "co-party"), nor can it rely on supplemental jurisdiction as the common law surety issues raised herein are not sufficiently related to the underlying limitation of liability action. *See* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

Reliance is without standing to enforce the judgment as it is a non-party here.

Finally, and in the event this Court finds that jurisdiction exists, UFO argues that abstention is appropriate given the state court proceeding against the insolvent Reliance.[10]

### IV. *Analysis*

Having carefully considered the arguments raised and the governing law, the Court finds here that Reliance improperly invokes Rule 65.1 to assert exoneration and/or subrogation rights. As noted earlier, Rule 65.1 establishes a procedure for enforcing liability on bonds executed under the federal rules, by providing that a surety's liability, "may be enforced by motion without the necessity of an independent action." Fed.R.Civ.P. 65.1. The rule does not, however, make a similar provision for sureties to proceed against their principals. *See generally Major v. General Motors Corp.,* 742 F.Supp. 1357, 1358 (M.D.Tenn.1990).[11]

Although the Ninth Circuit has not addressed the issue of whether a surety may proceed against the principal under Rule 65.1, the court in *Aerotrade, Inc. v. Republic of Haiti,* 399 F.Supp. 618, 618 (S.D.N.Y. 1975), concluded as follows:

> Rule 65.1 contemplates a summary procedure by parties entitled to recover damages from a surety. For this purpose the surety expressly consents to jurisdiction; however, such consent to jurisdiction is granted only in favor of the party entitled to proceed on the bond executed by the surety.

*Id.* Further, the court denied the surety leave to cross-claim against the principal to enforce an indemnity agreement stating, "[a]ny claim based upon the indemnity agreement ... may not be asserted under Rule 65.1." *Id.*

Reliance attempts to factually distinguish *Aerotrade* from the instant case by arguing that the relief requested here is not in the nature of a cross-claim and is based upon a stipulation, not a separate agreement as in *Aerotrade.* These points of distinction, however, reflect a narrow and overly mechanical reading of the case. The *Aerotrade* court was plainly discussing Rule 65.1 and the rights of a surety to proceed under the rule. Further, the court's language, with regard to jurisdiction being granted only in favor of the party proceeding on the bond executed by the surety, is applicable to a surety's rights generally and is not limited to only those situations where a surety asserts a cross-claim. Contrary to Reliance's position, therefore, the *Aerotrade* reasoning is highly persuasive, especially given the dearth of case law in this area.

Additionally, Reliance is precluded from attempting to enforce its rights of exoneration and/or subrogation under the plain language of the rule. The rule emphasizes that a surety's liability may be enforced "without the necessity of an independent action." Fed.R.Civ.P. 65.1. This provision contemplates a simple ancillary motion practice designed to resolve efficiently the surety's liability on the bond. *See* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2972 (2d ed. 1995) ("The importance of Rule 65.1 is that it permits the liability of the surety to be enforced through an expeditious, summary procedure without the necessity of an inde-

---

**10.** UFO raises additional arguments, which the Court has considered but does not include here.

**11.** The *Major* court, in analyzing an attorney's motion to enforce two surety bonds, denied the motion for lack of jurisdiction. 742 F.Supp. 1357. Specifically, the court looked at Rule 65A of the Tennessee Rules of Civil Procedure, which is analogous to federal rule 65.1, and stated:

> "[the rule] does not provide for a summary proceeding by which sureties may proceed against their principals, a motion made pursu-

ant to this [rule] is an independent and original action. Thus, for this [c]ourt to entertain [the] motion, it would have to be made in an independent action."

*Id.* at 1358 (internal citations omitted). Further, the court found that because the motion was based on state law, the court was without jurisdiction over the matter. *See id.* Additionally, the court noted that filing the motion as an independent action would not change its ruling. *See id.*

pendent action."). Though characterized as an opposition, Reliance is seeking determination of its right to exoneration and/or subrogation; UFO is correct, such claims must be raised in an independent action. Application of the rule in the manner contemplated by Reliance would destroy the summary nature of the Rule 65.1 proceeding and render the emphasized clause meaningless. Accordingly, and on this basis the Court GRANTS the Olivieris' Motion for Order Directing Payment of Judgment by Surety, and DENIES Reliance's Motion for Judgment Debtor to Pay.

### CONCLUSION

For the foregoing reasons, this Court GRANTS Limitation Defendants/Counterclaim Plaintiffs Diana Lynn Olivieri and Ralph S. Olivieri's Motion for Order Directing Payment of Judgment by Surety, and DENIES Reliance Insurance Company's Motion for i) Order Directing Judgment Debtor to Pay the Judgment Amount to the Court for Distribution to Judgment Creditors; or ii) Issuance of a Writ of Execution. Further, the Court DENIES all requests for attorneys' fees and costs pursuant to *Bass v. First Pac. Networks, Inc.,* 219 F.3d 1052 (9th Cir.2000).

IT IS SO ORDERED.