IN THE DISTRICT COURT OF THE UNITED STATES 
 FOR THE MIDDLE DISTRICT OF ALABAMA 
 SOUTHERN DIVISION 

BRANDON T. HAYES, ) 
 ) 
Plaintiff, ) 
 ) 
v. ) CASE NO. 1:19-cv-627-SRW 
 ) 
ANDREW SAUL, ) 
Commissioner of Social Security, ) 
 ) 
Defendant. ) 

 MEMORANDUM OPINION AND ORDER1 
I. Introduction 
Plaintiff Brandon Hayes commenced this action on August 30, 2019, pursuant to 42 
U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of a final adverse decision of the 
Commissioner of Social Security (“the Commissioner”) denying his applications for a 
period of benefits, social security disability (“SSD”), and supplemental security income 
(“SSI”) benefits under Titles II and XVI of the Social Security Act (“the Act”). See Doc. 
1; Doc. 14. Plaintiff filed his applications on May 11, 2016, alleging that he became 
disabled on July 1, 2009. See Doc. 16-5 at 2-20. Plaintiff’s applications were denied at the 
administrative level. Doc. 16-4 at 2-13. Plaintiff then requested and received a hearing 
before an Administrative Law Judge (“ALJ”). Doc. 16-4 at 16-17. On September 5, 2018, 
ALJ Laura Robinson issued an adverse decision after holding a hearing on plaintiff’s 

1 For purposes of this appeal, the court uses the Code of Federal Regulations (“C.F.R.”) that was 
effective until March 27, 2017, as that was the version of the C.F.R. in effect at the time the claim 
was filed at the administrative level. See 20 C.F.R. Part 404 and 416, effective March 27, 2017; 
see also https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q. 3. 
applications. Doc. 16-2 at 22-24. The Appeals Council denied plaintiff’s request for 
review, and the ALJ’s decision became the final decision of the Commissioner. See Doc. 
16-2 at 2-5; Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). 

In the instant appeal, plaintiff asks the court to reverse the Commissioner’s decision 
and award benefits or, in the alternative, to remand this cause to the Commissioner under 
sentence four of 42 U.S.C. § 405(g). See Docs. 1 at 2; 14 at 23. This case is ripe for review 
pursuant to 42 U.S.C. §§ 405(f) and 1383(c)(3). Under 28 U.S.C. § 636(c) and Rule 73 of 
the Federal Rules of Civil Procedure, the parties have consented to the conduct of all 
proceedings and entry of a final judgment by the undersigned United States Magistrate 
Judge. See Docs. 6, 7. Based on its review of the parties’ submissions, the relevant law, 

and the record as a whole, the court concludes that the Commissioner’s decision is due to 
be reversed and remanded for additional proceedings. 
II. Standard of Review 
The court’s review of the Commissioner’s decision is a limited one. This court must 
find the Commissioner’s decision conclusive if it is supported by substantial evidence. 42 
U.S.C. § 405(g); Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). “Substantial 
evidence is more than a scintilla,” but less than a preponderance, “and is such relevant 

evidence as a reasonable person would accept as adequate to support a conclusion.” 
Crawford v. Comm’r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (“Even if the 
evidence preponderates against the Commissioner’s findings, [a reviewing court] must 
affirm if the decision reached is supported by substantial evidence”) (citations omitted). 
The court will reverse the Commissioner’s decision if it is convinced that the decision was 

 2 
not supported by substantial evidence or that the proper legal standards were not applied. 
Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not 
warranted even if the court itself would have reached a result contrary to that of the 

factfinder. See Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A reviewing 
court may not look only to those parts of the record which support the decision of the ALJ, 
but instead must view the record in its entirety and take account of evidence which detracts 
from the evidence relied on by the ALJ. Hillsman v. Bowen, 804 F.2d 1179, 1180 (11th 
Cir. 1986). 
[The court must] . . . scrutinize the record in its entirety to determine the 
reasonableness of the [Commissioner’s] . . . factual findings. . . . No similar 
presumption of validity attaches to the [Commissioner’s] . . . legal 
conclusions, including determination of the proper standards to be applied in 
evaluating claims. 

Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). 
To qualify for disability benefits and establish his or her entitlement for a period of 
disability, a person must be unable to: 
engage in any substantial gainful activity by reason of any medically 
determinable physical or mental impairment which can be expected to result 
in death or which has lasted or can be expected to last for a continuous period 
of not less than 12 months. 

42 U.S.C. § 423(d)(1)(A).2 To make this determination, the Commissioner employs a five-
step, sequential evaluation process. See 20 C.F.R. §§ 404.1520; 416.920. 
(1) Is the person presently unemployed? 
(2) Is the person’s impairment severe? 

2 A “physical or mental impairment” is one resulting from anatomical, physiological, or 
psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory 
diagnostic techniques. 42 U.S.C. § 423(d)(3). 

 3 
(3) Does the person’s impairment meet or equal one of the specific 
impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of 
Impairments]? 
(4) Is the person unable to perform his or her former occupation? 
(5) Is the person unable to perform any other work within the economy? 
An affirmative answer to any of the above questions leads either to the next 
question, or, on steps three and five, to a finding of disability. A negative 
answer to any question, other than step three, leads to a determination of “not 
disabled.” 

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).3 
The burden of proof rests on the claimant through step four. See Phillips v. Barnhart, 
357 F.3d 1232, 1237–39 (11th Cir. 2004); see also Ellison v. Barnhart, 355 F.3d 1272, 
1276 (11th Cir. 2003). A claimant establishes a prima facie case of qualifying disability 
once he or she has carried the burden of proof from step one through step four. At step five, 
the burden shifts to the Commissioner, who must then show that there are a significant 
number of jobs in the national economy that the claimant can perform. Id. 
To perform the fourth and fifth steps, the ALJ must determine the claimant’s 
Residual Functional Capacity (“RFC”). Phillips, 357 F.3d at 1238–1239. The RFC is what 
the claimant is still able to do despite the claimant’s impairments and is based on all 
relevant medical and other evidence. Id. It may contain both exertional and nonexertional 
limitations. Id. at 1242–1243. At the fifth step, the ALJ considers the claimant’s RFC, age, 
education, and work experience to determine if there are jobs available in the national 

3McDaniel is a supplemental security income (SSI) case. The same sequence applies to disability 
insurance benefits brought under Title II of the Social Security Act. Supplemental security income 
cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title 
II cases, and vice versa. See, e.g., Ware v. Schweiker, 651 F.2d 408, 412 (5th Cir. 1981); Smith v. 
Comm’r of Soc. Sec., 486 F. App’x 874, 876 n.* (11th Cir. 2012) (“The definition of disability and 
the test used to determine whether a person has a disability is the same for claims seeking disability 
insurance benefits or supplemental security income.”). 

 4 
economy that the claimant can perform. Id. at 1239. To do this, the ALJ can use either the 
Medical Vocational Guidelines (“grids”), see 20 C.F.R. pt. 404 subpt. P, app. 2, or call a 
vocational expert (“VE”). Id. at 1239–40. 

The grids allow the ALJ to consider factors such as age, confinement to sedentary 
or light work, inability to speak English, educational deficiencies, and lack of job 
experience. Each factor can independently limit the number of jobs realistically available 
to an individual. Id. at 1240. Combinations of these factors yield a statutorily-required 
finding of “Disabled” or “Not Disabled.” Id. 
III. Administrative Proceedings 
Plaintiff was 25 years old at the time he filed his applications for benefits and was 

27 at the time of the ALJ’s decision. Doc. 16-2 at 30; R. 29, 40. Plaintiff is a resident of 
Geneva, Alabama, and lives in a house with his mother and father. Id. at 42; R. 41. Plaintiff 
completed school through a diploma program in graphic design. Id. at 43; R. 42. 
Plaintiff claims that his ability to work is limited by partial blindness in his right 
eye, asthma, atopic dermatitis, and skin allergies. See id. at 43-44; R. 42-43. The only job 
previously held by plaintiff was that of a part-time program specialist at a daycare center 
taking care of children, which he held from 2007 to 2009. Id. at 43, 52-53; R. 42, 51-52. 

Following the administrative hearing, and employing the five-step process, the ALJ 
found at step one that plaintiff had “not engaged in substantial gainful activity since July 
1, 2009, the alleged onset date.” Id. at 27; R. 26. At step two, the ALJ found that plaintiff 
suffers from the following severe impairments: “keratoconus, corneal dystrophy, history 
of subluxation of right lens status post repair, history of right retinal detachment status post 

 5 
repair, atopic dermatitis, and asthma.” Id. At step three, the ALJ found that plaintiff “does 
not have an impairment or combination of impairments that meets or medically equals the 
severity of one of the listed impairments[.]” Id. at 28; R. 27. Next, the ALJ articulated 

plaintiff’s RFC as follows: 
the claimant has the residual function capacity to perform medium work as 
defined in 20 CFR 202.1567(c) and 416.967(c) except for the following 
limitations. The claimant cannot perform commercial driving. He cannot 
perform tasks requiring excellent visual acuity such as that required for 
working with very small items such as beads or threads, or reading fine print. 
The claimant cannot work at heights or hazards. The claimant needs to work 
indoors in a climate controlled environment. He must avoid concentrated 
exposure to extreme temperatures, humidity, wetness, and pulmonary 
irritants. 

Id.; R. 27. At step four, the ALJ concluded that that plaintiff “has no past relevant work.” 
Id. at 30; R. 29. At step five, based on the plaintiff’s RFC, age, education, work experience, 
and the testimony of the VE, the ALJ found that “there are jobs that exist in significant 
numbers in the national economy that the claimant can perform.” Id. at 31; R. 30. 
Accordingly, the ALJ determined that plaintiff “has not been under a disability . . . from 
July 1, 2009, through the date of this decision[.]” Id. at 32; R. 31. 
IV. Issues on Appeal 
Plaintiff raises four issues on appeal, arguing that the Commissioner’s decision is 
not supported by substantial evidence because (1) the Appeals Council failed to consider 
new material and evidence, (2) the ALJ failed to consider listing 8.05 for atopic dermatitis 
properly, (3) the ALJ’s finding of plaintiff’s RFC was not based on substantial evidence, 
and (4) the ALJ failed to weigh the medical opinions of record properly. Doc. 14 at 1. The 
Commissioner maintains that the Appeals Council properly declined review, that the ALJ 
 6 
properly weighed the evidence, and that the decision is supported by substantial evidence. 
Doc. 15.4 
V. Discussion 

1. Appeals Council Decision 
Plaintiff argues that this case should be remanded because the Appeals Council 
failed to review plaintiff’s case based on additional evidence that plaintiff submitted after 
the ALJ’s decision—specifically, (a) a medical source statement from Dr. Tyler Hall, dated 
August 31, 2018; (b) a residual functional capacity report from Dr. Paola Bass, dated 
October 9, 2018; and (c) a medical source statement from Dr. Paola Bass, dated October 
24, 2018. 

The court “must consider evidence not submitted to the administrative law judge 
but considered by the Appeals Council when that court reviews the Commissioner’s final 
decision denying Social Security benefits.” Ingram, 496 F.3d at 1258. Evidence is properly 
presented if the evidence is “new and material,” and it relates to “the period on or before 
the date of the hearing decision.” See 20 C.F.R. § 416.1470(a)(5); Russell v. Astrue, 742 F. 
Supp. 1355, 1382 (N.D. Ga. 2010) (citing Smith v. Soc. Sec. Admin., 272 F. App’x, 789, 
800-02 (11th Cir. 2008)). The Appeals Council must review a case if properly presented 

new evidence shows that “there is a reasonable probability that the additional evidence 
would change the outcome of the decision.” 20 C.F.R. § 416.1470(a). However, if the 
Appeals Council denies a request for review, it is “not required to provide a detailed 

4 The defendant appears to have filed two identical briefs, see Docs. 15, 20, and two identical 
administrative transcripts, see Docs. 16, 21. For the purpose of this court’s review, the court relies 
on the first-filed version of each document. 
 7 
discussion of the new evidence or an explanation as to why the claimant’s new evidence 
would not change the ALJ’s decision.” Douglas v. Comm’r of Soc. Sec., 764 F. App’x 862, 
863 (11th Cir. 2019) (citing Mitchell v. Comm’r of Soc. Sec. Admin., 771, F.3d 780, 784-

85 (11th Cir. 2014)). “[W]hen a claimant properly presents new evidence to the Appeals 
Council, a reviewing court must consider whether that new evidence renders the denial of 
benefits erroneous.” Ingram, 496 F.3d at 1262. 
In the instant case, plaintiff submitted three additional pieces of evidence to the 
Appeals Council that were not before the ALJ. The letter from Dr. Tyler Hall notes that 
plaintiff’s best corrected visual acuity was 20/300 in the right eye, and 20/50 in the left eye. 
Doc. 16-2 at 21; R. 20. The residual functional capacity report from Dr. Paola Bass 

indicates that plaintiff can sit for 2 hours at one time for a maximum of 4 hours; 
occasionally lift and carry 6-10 pounds; frequently use both arms and hands to push and 
pull; occasionally use his right foot and leg to push and pull; frequently use his left foot 
and leg to push and pull; occasionally bend, squat, crawl, reach, and use his hands for fine 
manipulation and handling; and frequently use his hands for simple grasping. See Doc. 16-
2 at 16-20; R. 15-18. The medical source statement from Dr. Paola Bass states that plaintiff 
is “permanently disabled” and has diagnoses of long term illnesses “which prohibit him 

from being gainfully employed.” Doc. 16-2 at 24; R. 13. This statement explains that 
plaintiff is at “increased risk of infections even with limited exposure to germs,” he has 
limited ability to “be exposed to even minor stress,” he “has severe allergic reactions when 
exposed to new environments,” and he “cannot be exposed to dust, as this sometimes 

 8 
causes pneumonia.” Id. Plaintiff asserts that these “uncontroverted medical opinions would 
likely change the administrative proceeding.” Doc. 14 at 18. 
The administrative record in this case makes it clear that the Appeals Council 

accepted the additional evidence submitted by plaintiff but found that it did not present a 
reasonable probability of changing the outcome of the ALJ’s decision. See Doc. 16-2 at 3; 
R. 2. While it falls upon the court to determine whether new evidence properly presented 
to the Appeals Council renders a denial of benefits erroneous by examining whether the 
decision is supported by substantial evidence, the court does not reach this argument, as 
the Commissioner’s decision is due to be reversed and remanded, as outlined below. 
2. Requirements of Listing 8.05 

Plaintiff argues that the ALJ failed to consider Listing 8.05 for Atopic Dermatitis 
properly because the record evidence reflects that plaintiff met or equaled the listing in 
2010. Doc. 14 at 19. Plaintiff cites to several medical reports between March and June of 
2010 which note various skin lesions; summarize the treatment that plaintiff received, 
including antibiotics and wet wraps; and describe plaintiff’s flareups and responses to 
treatment. Id. at 19; see also Doc. 16-12 at 16-32; R. 600-616. 
A plaintiff is disabled if his or her impairment meets or equals a Listing. 20 C.F.R. 

§§ 404.1520(a)(4)(iii) and (d), 416.920(a)(4)(iii) and (d). “To ‘meet’ a Listing, a claimant 
must have a diagnosis included in the Listings and must provide medical reports 
documenting that the conditions meet the specific criteria of the Listings and the duration 
requirement.” Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. 
§§ 404.1525(a)-(d)). “To ‘equal’ a Listing, the medical findings must be ‘at least equal in 

 9 
severity and duration to the listed findings,” Id. at 1224 (citing 20 C.F.R. § 404.1526(a)). 
A claimant’s impairments must meet or equal all of the specified medical criteria in a 
particular Listing for the claimant to be found disabled at step three. Sullivan v. Zebley, 493 

U.S. 521, 530-32 (1990). An impairment manifesting only some of the criteria does not 
qualify, no matter how severe. Id. at 530. It is a claimant’s burden at step three to prove 
disability. Id. at 532-33. The burden is a heavy one because “the [L]istings were designed 
to operate as a presumption of disability that makes further inquiry unnecessary.” Id. at 
532. 
The ALJ explicitly found that “[t]he claimant’s dermatitis does not meet or equal 
list 8.05 with record of extensive skin lesions of the stated duration persistent despite 

therapy.” Doc. 16-2 at 28; R. 27. The Commissioner argues that the ALJ’s determination 
was supported by substantial evidence, and that even if plaintiff were able to show that he 
meets the requirements of Listing 8.05, he would additionally have to show that he meets 
the requirements of Listing 8.00(C) which defines extensive skin lesions and indicates the 
frequency of flareups which should be considered. Doc. 20 at 9-10. The Commissioner 
maintains that the evidence put forth by plaintiff indicates that he met neither the severity 
nor frequency requirements of those listings. Id. at 10. 

Listing 8.05 provides for an award of benefits based on dermatitis. Specifically, the 
Listing states: 
8.05 Dermatitis (for example, psoriasis, dyshidrosis, atopic dermatitis, 
exfoliative dermatitis, allergic contact dermatitis), with extensive skin 
lesions that persist for at least 3 months despite continuing treatment as 
prescribed. 

 10 
20 C.F.R. pt. 404, subpt. P, app. 1, § 8.05. Listing 8.00(C) describes extensive skin lesions 
as follows: 
Extensive skin lesions that involve multiple body sites or critical body areas, 
and result in a very serious limitation. Examples of extensive skin lesions 
that result in very serious limitation include but are not limited to: 

a. Skin lesions that interfere with the motion of your joints and that very 
 seriously limit your use of more than one extremity; that is, two upper 
 extremities, two lower extremities, or one upper and one lower extremity. 
b. Skin lesions on the palms of both hands that very seriously limit your 
 ability to do fine and gross motor movements. 
c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas 
 that very seriously limit your ability to ambulate. 

20 C.F.R. pt. 404, subpt. P, app. 1, § 8.00(C). To determine whether frequent flareups of 
skin lesions not meeting the requirements of the Listing – for instance, with periods of 
remission – may qualify as an impairment, the ALJ may consider how “frequent and 
serious” the flareups are, how quickly they resolve, and how an individual functions 
between flareups, “to determine whether [an applicant has] been unable to do any gainful 
activity for a continuous period of at least 12 months or can be expected to be unable to do 
any gainful activity for a continuous period of at least 12 months.” 20 C.F.R. pt. 404, subpt. 
P, app. 1, § 8.00(C)(2). 
Plaintiff has not met his burden of showing that he meets the requirements of Listing 
8.05 because the record evidence does not show that plaintiff had “extensive skin lesions” 
as defined in the regulation, nor did plaintiff show that he was unable to do any gainful 
activity for a period of 12 continuous months, either prospectively or in the past. The court 
therefore finds that the ALJ properly considered Listing 8.05, and the decision was not in 
error in this regard. 
 11 
3. Residual Functional Capacity Determination 
Plaintiff argues that the ALJ’s RFC finding was not based on substantial evidence 
because the ALJ inferred that plaintiff was able to perform medium work despite a prior 

restriction indicated in plaintiff’s medical records, and because the ALJ reached 
inconsistent conclusions about plaintiff’s visual constriction. Doc. 14 at 21-22. 
The ALJ is responsible for determining a claimant’s RFC. 20 C.F.R. § 416.946(c). 
Such “assessment should be based upon all of the relevant evidence of a claimant’s 
remaining ability to do work despite her impairments.” Beech v. Apfel, 100 F. Supp. 2d 
1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546). The ALJ, not the physician, is 
charged with assessing a claimant’s RFC at the administrative level. See 20 C.F.R. §§ 

416.927(d)(2), 416.946(c); see also Castle v. Colvin, 557 F. App’x 849, 853–854 (11th Cir. 
2014) (finding that ALJ “properly carried out his regulatory role as an adjudicator 
responsible for assessing [the plaintiff’s] RFC”). The determination of a claimant’s RFC is 
an administrative assessment, not a medical one, and the final responsibility for assessing 
a claimant’s RFC rests with the ALJ. See 20 C.F.R. §§ 416.927(e)(2), 416.945(a)(3), 
416.946(a); SSR 96-8p, 1996 SSR LEXIS 5, at *13 (July 2, 1996); Castle, 557 F. App’x at 
853. Although an ALJ may not make medical findings, see Marbury v. Sullivan, 957 F.2d 

837, 840 (11th Cir. 1992), it is the ALJ’s responsibility to resolve conflicting medical 
opinions and evidence. See Watson v. Heckler, 738 F.2d 1169, 1172 (11th Cir. 1984). The 
ALJ, “as the factfinder, does not need an opinion from a treating or examining doctor 
concerning a claimant’s functional limitation[s] in order to make a finding regarding a 
claimant’s RFC.” Williams v. Astrue, 2008 U.S. Dist. LEXIS 12010, at *15 (M.D. Fla. Feb. 

 12 
18, 2009). “To find that an ALJ’s RFC determination is supported by substantial evidence, 
it must be shown that the ALJ has provided a sufficient rationale to link substantial record 
evidence to the conclusions reached.” Eaton v. Colvin, 180 F. Supp. 3d 1037, 1055 (S.D. 

Ala. 2016) (citation and internal quotation marks omitted). It is not this court’s role to 
reweigh the evidence. See Moore v. Barnhart, 405 F.3d 1208, 1213 (11th Cir. 2005) (“To 
the extent that [the plaintiff] points to other evidence which would undermine the ALJ’s 
RFC determination, her contentions misinterpret the narrowly circumscribed nature of our 
appellate review, which precludes us from re-weighing the evidence or substituting our 
judgment for that of the Commissioner even if the evidence preponderates against the 
decision.”) (internal quotations and footnotes omitted). 

The ALJ’s decision evaluated the plaintiff’s testimony regarding his vision – that is, 
his treatment history and his visual impairments, including intermittent constriction of his 
right eye. Doc. 16-2 at 29; R. 28. The ALJ determined that plaintiff’s visual impairments 
did not result in disabling functional limitations despite the fact that plaintiff’s vision 
continued to require regular management for vision problems and tearing. Id. Likewise, the 
ALJ reviewed evidence about the plaintiff’s need for ongoing treatment for dermatitis and 
his history of asthma in considering other environmental limitations on plaintiff’s RFC. 

See Doc. 16-2 at 28-30; R. 27-29. Plaintiff points to postoperative instructions issued by 
Callahan Eye Hospital on October 17, 2017, instructing plaintiff not to lift anything heavier 
than 10 pounds, and asserts that there are no indications that this restriction was ever lifted. 
Doc. 14 at 21. The Commissioner maintains that the restriction appears to be a temporary 
restriction imposed immediately after eye surgery, that no other treating or examining 

 13 
physician indicated any other physical limitations during the relevant period, and that 
plaintiff was able to perform activities such as attending church and community college 
and hanging out with friends that were inconsistent with additional limitations. Doc. 15 at 

11. However, the ALJ did not explicitly mention any basis for finding that plaintiff’s RFC 
exceeded the restrictions imposed by Callahan Eye Hospital, and there is no basis in the 
record for the court to find that substantial evidence supports the ALJ’s RFC determination 
with respect to plaintiff’s ability to stoop, strain, bend, or lift over 10 pounds. The ALJ’s 
decision with regard to the RFC is therefore due to be reversed and remanded. 
4. ALJ’s Weighing of Medical Records 
Plaintiff argues that the ALJ’s decision is erroneous because the ALJ summarized 

the medical records and failed to state the weight she accorded to any medical provider. 
The opinion of a treating physician “must be given substantial or considerable weight 
unless good cause is shown to the contrary.” Phillips v. Barnhart, 357 F.3d 1232, 1240 
(11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good 
cause exists when the treating physician’s opinion was not bolstered by the evidence, the 
evidence supported a contrary finding, or the treating physician’s opinion was conclusory 
or inconsistent with his or her own medical records. Id. at 1241. The Commissioner must 

specify what weight is given to a treating physician’s opinion, and any reason for giving it 
no weight at all. See MacGregor v. Bowen, 785 F.2d 1050, 1053 (11th Cir. 1986) (citations 
omitted). Failure to do so is reversible error. Id. As this court has explained: 
Weighing the opinions and findings of treating, examining, and non-
examining physicians is an integral part of steps four and five of the ALJ’s 
sequential evaluation process for determining disability. In Winschel v. 
Commissioner of Social Security, 631 F.3d 1176, 1178-79 (11th Cir. 2011), 
 14 
the Eleventh Circuit held that whenever a physician offers a statement 
reflecting judgments about the nature and severity of a claimant’s 
impairments, including symptoms, diagnosis, and prognosis, what the 
claimant can still do despite his or her impairments, and the claimant’s 
physical and mental restrictions, the statement is an opinion requiring the 
ALJ to state with particularity the weight given to it and the reasons therefor. 
Id. (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); Sharfarz v. Bowen, 
825 F.2d 278, 279 (11th Cir. 1987)). The Eleventh Circuit states that “’[i]n 
the absence of such a statement, it is impossible for a reviewing court to 
determine whether the ultimate decision on the merits of the claim is rational 
and supported by substantial evidence.’” Id. (quoting Cowart v. Schweiker, 
662 F.2d 731, 735 (11th Cir. 1981)). See also MacGregor v. Bowen, 786 F.2d 
1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight 
given to opinions and the reasons therefor constitutes reversible error); Lewis 
v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly 
articulate reasons for giving less weight to the opinion of a treating physician 
constitutes reversible error). 

Rudolph v. Berryhill, 2018 U.S. Dist. LEXIS 51177, at **13-14 (M.D. Ala. Mar 28, 2018) 
(quoting Albery v. Comm’r of Soc. Sec., 2012 U.S. Dist. LEXIS 91829, at *7 (M.D. Fla. 
June 7, 2012), report and recommendation adopted, 2012 U.S. Dist. LEXIS 91832 (M.D. 
Fla. July 3, 2012), and citing Winschel, 631 F.3d at 1179). 
In this case, the ALJ summarized information about plaintiff’s treatment history and 
made a determination about what plaintiff can and cannot do without specifically 
addressing the weight given to the opinions of various medical sources. While the 
Commissioner argues that the ALJ “properly considered the relevant factors including: the 
examining relationship, whether the opinion is well-supported; consistency with the 
record; and specialization,” Doc. 15 at 12-13, controlling law requires an ALJ to state with 
particularity the weight given to opinions and the reasons therefor, not merely to consider 
them. Under these circumstances, the court must remand this matter for additional 
proceedings. See Ingram, 496 F.3d at 1260 ("The [Commissioner]'s failure to apply the 
 15 
correct law or to provide the reviewing court with sufficient reasoning for determining that 
the proper legal analysis has been conducted mandates reversal.") (bracketed text in 
original); Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991) (the ALJ errs as 

a matter of law if the written decision lacks enough information for the court to review the 
ALJ's findings to ensure that proper legal standards were employed and that the factual 
findings are based on substantial evidence). The ALJ must expressly articulate the weight 
given to each medical opinion and the underlying reasons supporting such decision so that, 
if another appeal follows, a reviewing court can assess whether proper legal standards were 
applied. 
VI. Conclusion and Order 

For the reasons explained above, the decision of the Commissioner will be reversed 
and remanded pursuant to sentence four of 42 U.S.C. § 405(g) by separate judgment so that 
the Commissioner can conduct additional proceedings consistent with this opinion. The 
court does not reach plaintiff’s arguments that are not expressly discussed herein. On 
remand, the court expects that the Commissioner will consider plaintiff’s arguments as to 
those issues as well and will develop the record as is necessary in areas not expressly 
considered in this opinion. 

Done, on this the 9th day of September, 2020. 
 /s/ Susan Russ Walker 
 Susan Russ Walker 
 United States Magistrate Judge 

 16